IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ALLEN STODDARD, | ) | Case No. 5:20-cv-754 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| LYNEAL WAINWRIGHT, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION**[1] |

On January 6, 2013, David Allen Stoddard went looking for his off-and-on girlfriend, Jennifer Risten ("Jennifer"), at her house. Earlier that evening, they had gone out to a night club with some friends but separated after Stoddard upset Jennifer's friend, Jessica Halman, and left them on the side of the road. Jennifer was not home when Stoddard arrived, but still in the house was Jennifer's sister, Jolynn Risten ("Jolynn), and her housemates, David Nelson and Anna Karam. Halman and Nelson told Stoddard he was not welcome, but Stoddard remained and kept asking for Jennifer. After his third request, Stoddard pulled out a gun and shot Halman in the head. Nelson ran into the house, to the stairs, and encountered Jolynn and Karam. Stoddard followed and fired into the stairwell while yelling at Nelson. Stoddard missed Nelson but hit Karam in the head, killing her and her unborn child.

---

[1] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation pursuant to Local Rule 72.1.

A jury later found Stoddard guilty of the aggravated murder of Karam, the reckless homicide of Karam's unborn child, the attempted murders of Halman and Nelson, the felonious assault of Nelson, and the aggravated burglary of Jennifer's home.  The jury also found Stoddard guilty of two capital specifications but recommended a life sentence without the possibility of parole.  The trial court accepted and imposed the jury's recommended sentence as to the aggravated murder charge and sentenced Stoddard to serve an additional 38.5 years on the other charges.

Stoddard, pro se, now petitions for a writ of habeas corpus, under 28 U.S.C. § 2254.  ECF Doc. 1.  Specifically, Stoddard asserts 13 claims:

**Ground One:** Stoddard's aggravated murder conviction was unsupported by and against the manifest weight of the evidence (ECF Doc. 1 at 6; ECF Doc. 14 at 17-19).

**Ground Two:** Stoddard's consecutive sentences on his attempted murder and reckless homicide convictions violated the Double Jeopardy Clause of the Fifth Amendment (ECF Doc. 1 at 6-7; ECF Doc. 14 at 20-21).

**Ground Three:** Appellate counsel was ineffective for not arguing that trial counsel were ineffective when they: (i) failed to investigate evidence showing that Stoddard resided at Jennifer's house;(ii) advised Stoddard not to testify; (iii) failed to request a jury instruction on intoxication (ECF Doc. 1 at 7-8; ECF Doc. 14 at 12-13).

**Ground Four:** Stoddard's aggravated burglary conviction was unsupported and against the manifest weight of the evidence (ECF Doc. 1 at 8-10; ECF Doc. 14 at 19).

**Ground Five:** The trial court erred in allowing 911 and voicemail recordings to be replayed during trial and jury deliberations (ECF Doc. 1 at 10; ECF Doc. 14 at 16).

**Ground Six:** Stoddard was denied the right to a fair trial as a result of prosecutorial misconduct (ECF Doc. 1 at 10-11; ECF Doc. 14 at 16).

**Ground Seven:** The trial court erred by allowing biased jurors to sit on the final jury panel (ECF Doc. 1 at 11-12; ECF Doc. 14 at 16).

**Ground Eight:** The trial court erred by not giving a jury instruction on intoxication (ECF Doc. 1 at 12-13; ECF Doc. 14 at 16).

**Ground Nine:** The trial court erred when it failed to merge his firearm specifications at sentencing (ECF Doc. 1 at 13; ECF Doc. 14 at 16).

**Ground Ten:** The appellate court erred in denying his Ohio App. R. 26(B) application to reopen for failure to demonstrate good cause to excuse his untimely filing (ECF Doc. 1 at 13-14; ECF Doc. 14 at 21).

**Ground Eleven:** Trial counsel were ineffective when they failed to investigate evidence of his residency (ECF Doc. 1 at 14-15; ECF Doc. 14 at 12-13).

**Ground Twelve:** The trial court erred when it failed to hold an evidentiary hearing on his petition for post-conviction relief (ECF Doc. 1 at 15-16; ECF Doc. 14 at 21).

**Ground Thirteen:** The cumulative effect of the trial court's, the prosecution's, and counsel's errors deprived Stoddard of a fair trial (ECF Doc. 1 at 16-18; ECF Doc. 14 at 22).

Respondent, Warden Lyneal Wainwright, filed a return of writ, arguing that:

(i) Stoddard's § 2254 petition was time-barred under the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations; and (ii) his claims were otherwise noncognizable, procedurally defaulted, and/or meritless.  ECF Doc. 8.  Stoddard filed a traverse.  ECF Doc. 14.

Because Stoddard's § 2254 petition is untimely and his claims are otherwise non-cognizable, procedurally defaulted, and/or meritless, I recommend that Stoddard's claims be DISMISSED and that his petition for a writ of habeas corpus be DENIED.  I further recommend that Stoddard not be granted a certificate of appealability.

# I.   State Court History

## A.   Trial Court Proceedings

On January 23, 2013, a Summit County, Ohio, grand jury indicted Stoddard with two counts of aggravated murder (Counts One and Two); two counts of attempted murder (Counts

Three and Four); two counts of aggravated burglary (Counts Five and Seven); one count of

felonious assault (Count Six); one count of aggravated robbery (Count Eight); and one count of

injuring animals (Count Nine).  ECF Doc. 8-1 at 5-10.  Counts One and Two also had attached

specifications that could have led to the imposition of the death penalty.  Id. at 6-7.  And Counts

One through Eight had firearm specifications attached.  Id. at 6-10.  Stoddard pleaded not guilty.

Id. at 11.

On April 11, 2013, the grand jury issued a supplemental indictment, additionally

charging Stoddard with one count of involuntary manslaughter (Count Ten).  Id. at 13.  Stoddard

pleaded not guilty.  ECF Doc. 13 at 55-78.

On September 10, 2013, the trial court severed Counts Seven, Eight, and Nine.  ECF

Doc. 8-1 at 16.  Stoddard then proceeded to trial on Counts One through Six and Count Ten.  Id.

at 17.[2]  The evidence presented at trial, as described by the Ohio Court of Appeals, was as

follows:

> {¶15} Jessica Halman testified that, on the evening of January 5, 2013, she
> and her friends decided to visit Lux Nightclub in Akron.  Stoddard agreed to drive
> Halman to the club along with Jennifer Risten, Jolynn Risten, and Tyler Boasko.
> Meanwhile, two of their other friends, Britni Fisher and Jason King, arrived
> separately in Fisher's car.  Halman testified that the group stayed at the club until
> it closed and then prepared to drive back to 261 East Archwood Avenue, where
> Jennifer, Jolynn, and their brother Anthony Risten lived.  Once again, Stoddard
> took Halman, Jennifer, Jolynn, and Boasko in his car while Fisher and King drove
> separately.
>
> {¶16} Halman testified that, as Stoddard was driving, the two of them began
> to argue about her cousin.  According to Halman, Stoddard made several
> disrespectful remarks and ultimately told her that "he was going to shoot [her]
> cousin in the head."  Halman then told Stoddard to stop the car and got out.
> Jennifer Risten exited the car along with Halman, and Stoddard left the two of
> them on the side of the road.  They were soon picked up, however, by Fisher and
> King.  Shortly thereafter, the group observed Jolynn Risten walking by herself on

---

[2] The jury voir dire proceedings can be found in ECF Doc. 13-1 and ECF Doc. 13-2 at 1-1535.  The guilt-
phase proceedings can be found in ECF Doc. 13-2 at 1551-89, ECF Doc. 13-3, and ECF Doc. 13-4.

the side of the road and picked her up as well.  The group then continued on to the Ristens' house on East Archwood Avenue.

{¶17} Halman testified that Jennifer Risten, Fisher, and King left again shortly after the group got back to the house.  At that time, several other people were still present at the house, including Jolynn Risten, Anna K., and David Nelson.  Both Anna and Nelson were friends of the family who were temporarily living at the house.  Halman testified that, as she and Jolynn were sitting in one of the bedrooms, they heard a car pull up to the back of the house.  Jolynn recognized the car as Stoddard's, so Halman went downstairs to lock the back door.  Before she could do so, however, a second car pulled up.  Halman noted that the second car contained several acquaintances, one of whom was extremely intoxicated.  Instead of locking the door, she headed outside and helped the intoxicated girl into the house.  Halman stated that Stoddard was walking toward the house as she went outside to help the girl.  Once Halman finished bringing the girl inside and handed her to Jolynn, she again made her way to the back door of the house.

{¶18} Halman testified that she found Stoddard standing at the back door speaking with Nelson.  Halman believed that the two were preparing to fight, so she stepped in between them and told Stoddard that there was no reason for him to be there.  Stoddard inquired as to Jennifer Risten's whereabouts, but Halman told him that Jennifer had left.  According to Halman, she accused Stoddard of being disrespectful towards her and her family, but Stoddard only continued to ask where Jennifer was.  Halman stated that Stoddard then began "kind of rocking his body and mumbling to himself," so she turned to say something to Nelson.  As she turned back toward Stoddard, Stoddard pulled a gun from his pocket and shot her in the head.  Halman testified that she spun and fell to the ground.  From her position on the ground, Halman heard additional gunshots.

{¶19} Nelson testified that he was living at 261 East Archwood Avenue when the events giving rise to this appeal occurred.  On the night in question, Nelson stayed at home while the others went to Lux Nightclub.  He testified that, after the group came home from the club, he was in the kitchen washing dishes.  At some point, Halman came into the kitchen and told Nelson: "Don't let him in."  Although Halman did not mention anyone by name, Nelson understood from her statement that there was a man outside whom she did not want in the house.  He then walked to the back door and saw Stoddard approaching.  Once Stoddard reached the door, Nelson told him that he was not welcome inside the house.

{¶20} Nelson testified that he was still standing near the back door with Stoddard when Halman reappeared and pushed him out of the way.  She placed herself in between the two men and began talking to Stoddard.  Nelson stated that, the next thing he knew, Stoddard removed a gun from his pocket and shot Halman.  Nelson saw Halman go down and watched as Stoddard fired the gun again in his direction.  Nelson ran from the back door through the kitchen and toward the family room while Stoddard followed.  Subsequently, he jumped into

the stairwell onto the steps leading to the second floor.  Nelson indicated that the stairwell was dark and that he ran into Jolynn and Anna on the steps.  At that point, Stoddard approached and began firing into the stairwell.  Nelson stated that he and Jolynn were on the same step and Anna was one step above them as Stoddard began firing.  Nelson testified that he thought Stoddard's gun eventually "jammed or something" because Stoddard stopped shooting.  They then realized that Stoddard had shot Anna.  Shortly thereafter, Stoddard left the house.

{¶21} Jolynn testified that Stoddard arrived at the house around the same time as another car, carrying an intoxicated acquaintance.  Jolynn took the intoxicated girl from Halman and walked her upstairs.  While she was on the second floor, Anna approached her.  Jolynn testified that Anna was staying in the attic and came downstairs to look for Britni Fisher.  As the two were talking, they heard the sound of two or three gunshots.  Jolynn testified that she and Anna began running in the direction of the stairs and ran into Nelson as they approached the bottom of the stairs.  Jolynn then saw Stoddard behind Nelson.  Stoddard proceeded to fire his gun up the stairs, and Jolynn dropped down on the steps along with Nelson.  She testified that Stoddard fired twice into the stairwell while he was yelling at Nelson.  Jolynn stated that, after Stoddard stopped firing and walked away, she realized that he had shot Ann.

***

{¶23} Martin Lewis, a forensic scientist in BCI's trace evidence section, testified that he analyzed several gunshot residue samples in this matter.  Specifically, he analyzed samples that were taken from Stoddard, Anna, Nelson, and Jolynn.  Lewis testified that the results for all four samples were highly indicative of gunshot residue.  He explained that a person does not need to fire a gun in order to come into contact with gunshot residue.  Residue also can be deposited on individuals who are in close proximity to a gun when it is discharged.

***

{¶29} Jennifer Risten testified that she and Stoddard were in a relationship until sometime around the end of November 2012.  Although the two were no longer dating in January 2013, they continued to see one another on a social basis.
***

{¶30} Jennifer confirmed that she left her house with a male friend almost as soon as she got home.  She testified that Stoddard was not welcome at her house after she left.  After she learned about the shooting, Jennifer discovered that Stoddard had two voicemail messages on her phone.  ***

***

> **{¶32}** Jason King testified that … Jennifer and Stoddard were experiencing a rough patch in their relationship at the time these events occurred.  He testified that the two had been fighting during the weeks leading up to the shooting incident and that the night in question "would have been the first night that [Stoddard] would have gotten to stay with [Jennifer] in weeks."  ***

ECF Doc. 8-1 at 108-11, 114-16.[3]

The jury found Stoddard guilty as to Counts One, Three, Four, Five, and Six.  *Id.* at 17-19.  With respect to Counts Two and Ten, the jury found Stoddard guilty of the lesser-included offense of reckless homicide.  *Id.* at 18-19.  The jury found Stoddard guilty of the firearm specifications.  *Id.* at 17-19.  And the jury found beyond a reasonable doubt, with respect to the capital specification attached to Count One, that Stoddard engaged in conduct involving purposeful killing of or attempted killing of two or more persons by him.  *Id.* at 17.  The trial court accepted the jury's guilt-phase findings.  *Id.* at 19.

After the mitigation phase, the jury found that the aggravating factors did not outweigh the mitigating circumstances presented by beyond a reasonable doubt and recommended a sentence of life without the possibility of parole. ECF Doc. 13-6 at 934.

On May 23, 2014, the trial court held a sentencing hearing, at which it merged Count Two into Count One and merged Count Six into Count Four.  *Id.* at 970-71.  The court declined to merge Count Ten with Count One.  *Id.* at 975-78.  The court then sentenced Stoddard to: (i) a term of life imprisonment without the possibility of parole on Count One; (ii) a 10-year term on Count Three; (iii) a 7-year term on each of Counts Four and Five; (iv) a 30-month term on Count Ten; and (v) four 3-year terms on the firearm specifications attached to Counts One, Three, Four, and Five.  ECF Doc. 8-1 at 22-24; *see also* ECF Doc. 13-6 at 998-1003.  The court ordered that each prison term to be served consecutively.  ECF Doc. 8-1 at 24; *see also* ECF Doc. 13-6 at

---

[3] The state court's factual findings are presumed correct unless Stoddard rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 801 (6th Cir. 2013).

1005-07.  The aggregate sentence was life imprisonment without the possibility of parole consecutive to 38 years and 6 months.[4]

The journal entry imposing Stoddard's convictions was entered on July 16, 2014.  ECF Doc. 8-1 at 33-39.

### B.    Direct Appeal

On July 17, 2014, Stoddard, through new counsel, appealed his convictions.  Id. at 41. Stoddard filed a merits brief, asserting two assignments of error:

1.  Stoddard's aggravated murder conviction was unsupported by and against the manifest weight of the evidence (ECF Doc. 8-1 at 56-60).

2.  Stoddard's consecutive sentences on his attempted murder and reckless homicide convictions violated Ohio Rev. Code § 2941.25, the Ohio Constitution, and the Double Jeopardy Clause of the Fifth Amendment (ECF Doc. 8-1 at 61-65).

In support of his first assignment of error, Stoddard argued that the state failed to prove the "purposely" element, given the testimony: (i) of his long-standing positive relationship with Karam and lack of hostility between them; (ii) that the hallway was dark when the shooting occurred; (iii) that he had previously fired gunshots to scare people; (iv) that he had a clear shot at Nelson yet did not execute Nelson; and (v) that after the shooting he put the gun in his mouth and asked Nelson to pull the trigger and attempted to give the gun to Jolynn.  Id. at 58-59.  In support of his second assignment of error, Stoddard argued that Karam's aggravated murder, her unborn child's reckless homicide, and Nelson's attempted murder were all part of the same

---

[4] On June 26, 2014, Stoddard pleaded guilty to Counts Seven and Nine.  ECF Doc. 8-1 at 26-29; see also ECF Doc. 13-7 (plea and sentencing transcript).  The court granted the state's motion to dismiss Count Eight and the firearm specifications attached to Counts Seven and Eight.  ECF Doc. 8-1 at 31.  The court sentenced Stoddard to an aggregate sentence of six years and two months, to be served concurrently with his already-imposed sentences.  ECF Doc. 8-1 at 31-32; ECF Doc. 13-7 at 22-23, 25-27.

course of conduct (shooting into the stairway) such that they should have merged at sentencing. *Id.* at 63-64.

The state filed an appellee brief. *Id.* at 75-92. On September 16, 2016, the Ohio Court of Appeals overruled Stoddard's assignments of error and affirmed his convictions. ECF Doc. 8-1 at 103-20; *State v. Stoddard*, 42 N.E.3d 264 (Ohio Ct. App. 2015). In overruling his first assignment of error, the court reasoned, as to the issue of sufficiency, that:

> {¶27} Viewing the evidence in the light most favorable to the State, we must conclude that the State set forth evidence from which a rational trier of fact could have concluded that Stoddard purposely caused Anna's death. … There was evidence that, right before he shot Anna, Stoddard had a confrontation with Halman and Nelson. Both Halman and Nelson told Stoddard that he was not welcome at the house and attempted to get him to leave. Rather than leave, Stoddard pulled a gun from his pocket and shot Halman in the head at close range. He then fired his gun again in Nelson's direction and chased him through the kitchen and into the area of the stairwell. There was evidence that, once he arrived at the stairwell, Stoddard fired his gun twice more into the stairwell where Nelson had just fled. Although the stairwell was dark, the space was a relatively small one and there was evidence that Stoddard was standing so close that the shots he fired left gunshot residue on all three of the people present in the stairwell. Based on all the evidence, the jury reasonably could have concluded that Stoddard fired into the stairwell with the intention of shooting Nelson, but instead shot and killed Anna. Thus, under the doctrine of transferred intent, the jury reasonably could have concluded that Stoddard purposely caused Anna's death. ***

ECF Doc. 8-1 at 113 (citations omitted).

In overruling Stoddard's second assignment of error, the Ohio Court of Appeals reasoned, as to Counts One and Ten, that: "Although both deaths resulted from a single shot, Stoddard's crimes were of dissimilar import. That is because they involved separate victims and the harm that resulted from each of the offenses was separate and identifiable." *Id.* at 119. As to Counts One and Four, the court reasoned that, because Stoddard had not argued before the trial court that those counts should have merged, the alleged merger error would be reviewed for plain error only. *Id.* at 120 (citing *State v. Rogers*, 413 Ohio St.3d 385 (Ohio 2015)). The court

further determined that Stoddard failed to establish plain error because his conduct (shooting into the stairwell) put both Anna and Nelson at risk, which, under Ohio law, could support multiple convictions.  *Id.*

On November 2, 2015, Stoddard appealed to the Ohio Supreme Court.  *Id.* at 122.  In his memorandum in support of jurisdiction, Stoddard re-asserted, in reverse order, the assignments of error he raised in his appeals court merits brief as propositions of law.  *Id.* at 125-40.  On February 24, 2016, the Ohio Supreme Court declined to exercise jurisdiction.  *Id.* at 141.

Stoddard did not file a petition for writ of certiorari in the United States Supreme Court.

### C.    Post-Conviction Proceedings

On June 1, 2015, while Stoddard's direct appeal was pending, he filed a pro se petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21, followed by an amended petition on August 10, 2015.  *Id.* at 142-47, 151-60.  Stoddard raised one claim of ineffective assistance of trial counsel for counsels' failure to investigate and present evidence of his actual innocence on the aggravated burglary charge.  *Id.* at 153-54.  Stoddard argued that he had informed counsel of evidence showing that he resided at 261 East Archwood Avenue at the time of the offense: (i) Summit County Children's Service records for Jennifer's children, in which Jennifer indicated that Stoddard was living in and paying bills at her house; (ii) police reports of prior incidents at Jennifer's house, including one four days before the offense, in which Jennifer stated that Stoddard was her boyfriend and a resident at her house; and (iii) jailhouse phone records, in which Jennifer stated that she found Stoddard's belongings in her house.  *Id.* Stoddard further stated that counsel failed to call witnesses who could testify to his residency.  *Id.* at 153.

In support of his petition, Stoddard submitted affidavits from: (i) his aunt, Sheryl Stoddard ("Sheryl"); (ii) his cousin, Felisha Hood; (iii) his brother, William Stoddard ("William"); (iv) Helen Stoddard ("Helen"); and (v) himself.  *See id.* at 155-160.  Sheryl stated that she helped Stoddard move into 261 East Archwood Avenue in mid-2012 and knew that Stoddard continued to reside there through the end of 2012.  *Id.* at 155.  Hood also stated that Stoddard lived at 261 East Archwood Avenue in 2012, adding that, to her knowledge, he did so up to the time of his arrest.  *Id.* at 156.  William stated that, although Stoddard rented a house with him toward the end of 2012, Stoddard would spend nights at 261 East Archwood Avenue, paid utility bills at the address, and had a key to the house.  *Id.* at 159.  Helen stated that she knew that Stoddard lived with Jennifer at some point at 261 East Archwood Avenue.  *Id.* at 160. And Stoddard stated that he: lived with Jennifer until January 6, 2013; paid rent; had belongings there; had his own key; came and went as he pleased; and was listed as a resident in police reports as late as January 1, 2013, by Jennifer in her interview with Summit County Children Services and Jennifer's recorded statements in jailhouse phone calls.  *Id.* at 157-58.

The state filed a memorandum in opposition.  *Id.* at 148-49.  On December 9, 2015, the trial court denied Stoddard's petition for post-conviction relief without a hearing.  *Id.* at 163-68. The court determined that Stoddard had not submitted proof showing that counsel was deficient and that he was actually prejudiced, reasoning that:

> Here, this Court presided over the Defendant's trial.  The affidavits of Sheryl Stoddard, Felisha Hood, and William Stoddard contain some pieces of nearly identical language and appear to have been drafted by the same person.  Sheryl Stoddard and Helen Stoddard share the same last name as the Defendant and appear to be relatives of the Defendant.  William Stoddard avers that he is, in fact, the Defendant's blood-related brother.  The Defendant's own affidavit is self-serving, but he avers that he lived with Ms. Risten at 261 East Archwood Avenue and had personal belongings there.  However, this petition appears to contrarily indicate that the house was solely Ms. Risten's; he states that jail phone records exist "where Jennifer Risten states to David Stoddard that she found some of his

11

belongings and that his aunt had picked up his belongings from *her* house while David Stoddard was incarcerated." … Finally, the affidavits are from the Defendant and his friends and family, all of whom are interested in the success of the Defendant's efforts.  The Court gives little evidentiary weight to the affidavits.

*Id.* at 167-68 (citation omitted; emphasis in original).

On January 8, 2016, Stoddard filed a notice of appeal.  *Id.* at 169.  On April 12, 2016, the state moved to dismiss Stoddard's appeal because no brief had been filed.  *Id.* at 170.  On May 4, 2016, the Ohio Court of Appeals dismissed Stoddard's appeal.  *Id.* at 172.

On June 22, 2016, Stoddard moved for reconsideration of the order dismissing his appeal. *Id.* at 173.  Stoddard stated that he timely filed his merits brief on February 22, 2016, but it was mistakenly filed by the court clerk in his trial court docket.  *Id.*  On July 20, 2016, the Ohio Court of Appeals granted Stoddard's motion, stating that a review of the trial court docket confirmed that Stoddard's brief was filed in the wrong docket because Stoddard had mistakenly listed his trial court case number on his brief.  *Id.* at 528 (Docket for Ohio Ct. App., Case No. CA-28078). The court gave Stoddard 20 days to file a complying brief.  *Id.*

On February 27, 2017, the state filed a second motion to dismiss Stoddard's appeal because no brief had yet been filed.  *Id.* at 175.  On April 17, 2017, Stoddard filed a response to the state's motion, stating that he timely filed his appellate brief on August 5, 2016 but mislabeled it as an appeal instead of a brief.  *Id.* at 211-12.  Stoddard contemporaneously filed a corrected brief.  *See id.* at 177-90.  On April 19, 2017, the Ohio Court of Appeals granted the state's motion and dismissed Stoddard's appeal.  *Id.* at 215.

On May 1, 2017, Stoddard filed a second motion for reconsideration, reiterating the arguments from his opposition to the state's motion to dismiss.  *Id.* at 217-18.  Stoddard added that he could only assume that the court did not receive his response in opposition due to issues

12

with the prison mailroom.  *Id.* at 217.  On June 6, 2017, the Ohio Court of Appeals granted Stoddard's motion, struck Stoddard's April 17, 2017 brief for noncompliance with the local rules, and ordered him to file a new brief within 20 days.  *Id.* at 528.

On July 17, 2017, Stoddard refiled his brief.  *Id.* at 254-67.  On July 27, 2017, the Ohio Court of Appeals struck Stoddard's brief for noncompliance with the local rules and ordered Stoddard to file a corrected brief within 20 days, which it later extended to September 5, 2017. *Id.* at 289-91, 528.

On August 31, 2017, Stoddard filed a fourth version of his appellate brief, raising one assignment of error: "Trial Court Abused its Discretion by Failing to Hold an Evidentiary Hearing and Erred to the Prejudice of Defendant, Appellant who the Court Made a Blanket Assessment Regarding the Credibility of Potential Witnesses for the Defense."  *Id.* at 292-308. Stoddard argued that the trial court should have held a hearing on his claim of ineffective assistance of trial counsel because if he resided at 261 East Archwood Avenue, he could not have been convicted of aggravated burglary and, by necessity, aggravated felony murder.  *Id.* at 301-02.  Stoddard argued that counsel's failure to investigate the evidence of his residency constituted a failure to conduct an adequate pretrial investigation into evidence of his actual innocence, the reasonableness of which the trial court failed to address.  *Id.* at 302-05.  And Stoddard argued that the trial court erred in its credibility findings because: (i) none of the affiants testified at trial; (ii) whether the affidavits were written by the same person or by friends and relatives was not relevant to the truthfulness of the facts asserted; (iii) the affidavits were not based on hearsay; (iv) it was unfair for the trial court to assess the credibility of the affiants without holding an evidentiary hearing; and (v) his pro se status, which led to him stating in his

affidavit "Her House," should not undermine the veracity of his message that he lived at Jennifer's house. *Id.* at 306-07.

The state filed an appellee brief. *Id.* at 336-45. On March 7, 2018, the Ohio Court of Appeals overruled Stoddard's assignment of error and affirmed the trial court's denial of his petition for post-conviction relief. ECF Doc. 8-1 at 353-58; *State v. Stoddard*, 2018-Ohio-833 (Ohio Ct. App. 2018). The Ohio Court of Appeals reasoned that:

> **{¶9}** The incident allegedly occurred during the early hours of January 6, 2013, at a house on Archwood Avenue. The affidavit that Mr. Stoddard submitted of Sheryl Stoddard avers that Mr. Stoddard lived at the Archwood house in 2012 but does not indicate that he was still living there in 2013. The affidavit he submitted of William Stoddard, his brother, also does not indicate that he lived at the Archwood house in 2013. According to Mr. Stoddard's brother, he and Mr. Stoddard began renting a house together "toward the end of 2012." Although he asserts that Mr. Stoddard continued spending some nights at the Archwood house even after they rented their own, he does not indicate that it continued into 2013.

> **{¶10}** The affidavit that Mr. Stoddard submitted of Felisha Hood does not specifically indicate that Mr. Stoddard was a resident of the Archwood house on the day of the incident. She only asserted that she knew that Mr. Stoddard had been living at the house in 2012 and that "to [her] knowledge" he was still living there at the time of his arrest. The final affidavit that Mr. Stoddard submitted was his own. In it, he avers that he lived at the Archwood house until January 6, 2013. In his brief to this Court, however, he indicates that he only "resided" at the house "on occasion." In his description of the incident, Mr. Stoddard also indicates that, after going out with a group of friends that evening, he originally returned to a different house before deciding to venture out again and go to out with a group of friends that evening, he originally returned to a different house before deciding to venture out again and go to the Archwood house.

> **{¶11}** Upon review of the record, we conclude that the trial court did not improperly exercise its discretion when it determined that the affidavits Mr. Stoddard submitted in support of his petition for post-conviction relief were not credible and that it was not necessary to hold a hearing on Mr. Stoddard's petition. … We also conclude that it did not err when it denied the petition. ***

ECF Doc. 8-1 at 356-57 (alteration in original; citation omitted).

Stoddard attempted to file a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court. *See* ECF Doc. 1-18 at 5 (Stoddard's affidavit). On April 27, 2018, the Ohio Supreme Court wrote to Stoddard that it would not docket his appeal because the documents were received on April 26, 2018 – three days after the deadline to perfect an appeal under Ohio S. Ct. Prac. R. 7.01(A)(1). ECF Doc. 1-17.

On May 22, 2018, the Ohio Supreme Court received from Stoddard a motion for leave to file a delayed appeal. ECF Doc. 1-18. Stoddard stated that he delivered his notice of appeal and memorandum in support of jurisdiction for mailing on April 16, 2018, but the prison mailroom did not process his mail until April 18, 2018. *Id.* at 2. Stoddard argued that he was therefore not responsible for the untimely filing of his appeal. *Id.* at 3. The court also received a memorandum in support of jurisdiction, reraising his arguments regarding the trial court's denial of his petition for post-conviction relief. ECF Doc. 1-16.

On May 23, 2018, the Ohio Supreme Court wrote to Stoddard that the documents were insufficient to perfect an appeal and did not comply with the court's rules because Ohio S. Ct. Prac. R. 7.01(A)(4) did not apply to appeals from the denial of post-conviction relief. ECF Doc. 1-19.

Sometime in September 2018, Stoddard mailed a motion for reconsideration to the Ohio Supreme Court, reiterating his arguments for why his appeal should be allowed to proceed despite being untimely by three days. ECF Doc. 1-20. On October 15, 2018, the Ohio Supreme Court wrote to Stoddard that it would not file his motion because it was untimely under Ohio S. Ct. Prac. R. 18.02(A) as to the decision declining to accept jurisdiction over his direct appeal. ECF Doc. 1-21.

According to Stoddard, he then mailed a petition for writ of certiorari to the Sixth Circuit on November 4, 2018. ECF Doc. 1 at 5; ECF Doc. 14 at 5. On December 4, 2018, the Sixth Circuit returned the petition to Stoddard because there was no pending action in the Sixth Circuit to which the petition would apply. ECF Doc. 1-22. The Court further stated that it lacked direct jurisdiction over actions of the Ohio Supreme Court. *Id.*

According to Stoddard, he mailed a petition for writ of certiorari to the United States Supreme Court on January 8, 2019. ECF Doc. 1 at 5; ECF Doc. 14 at 5. On February 7, 2019, the United States Supreme Court wrote back: "A petition that was denied for being untimely at a lower court may not be docketed at this Court." ECF Doc. 1-23.

### D. Ohio App. R. 26(B) Application to Reopen

On November 6, 2016, Stoddard filed an Ohio App. R. 26(B) application to reopen his direct appeal, which was docketed in his trial court docket. ECF Doc. 8-1 at 477 (trial court docket sheet). The trial court took no action. *See id.*

On January 12, 2017, Stoddard filed another Rule 26(B) application, this time in the Ohio Court of Appeals. *Id.* at 360. Stoddard sought to reopen his appeal to assert seven issues that were not raised on direct appeal due to ineffective assistance of appellate counsel:

1. Trial counsel were ineffective when they: (a) failed to investigate evidence showing that Stoddard resided at 261 East Archwood Avenue; (b) advised Stoddard not to testify; and (c) failed to request a jury instruction on intoxication (ECF Doc. 8-1 at 362-64).

2. Stoddard's conviction for aggravated burglary was against the manifest weight of the evidence (ECF Doc. 8-1 at 364-66).

3. The trial court erred by allowing the state to replay 911 and voicemail recordings to the jury (ECF Doc. 8-1 at 366).

4. Stoddard was denied the right to a fair trial due to prosecutorial misconduct (ECF Doc. 8-1 at 366-68).

5.  The trial court erred in allowing biased jurors to sit on the final jury panel (ECF Doc. 8-1 at 368).

6.  The trial court erred by not giving a jury instruction on intoxication (ECF Doc. 8-1 at 368).

7.  The trial court erred by failing to merge his firearm specifications at sentencing (ECF Doc. 8-1 at 369).

In addition to reiterating his previous arguments for why trial counsel was ineffective, Stoddard argued that trial counsel misinformed him that 911 and voicemail recordings would not be replayed to the jury during deliberations as long as he did not testify, given that they were replayed anyways. *Id.* at 363.  He also argued that he was so intoxicated at the time of the offense conduct as to lack the intent to commit murder, attempted murder, or felonious assault, such that counsel should have requested a jury instruction on intoxication. *Id.* at 363-64.

Stoddard argued that his conviction for aggravated burglary was against the manifest weight of the evidence because: (i) he was a resident at 261 East Archwood Avenue; (ii) he had already been let into the house when Halman told him he had no reason to be there; (iii) Halman was not a resident and Nelson did not ask him to leave; (iv) he was Jennifer's boyfriend, who did not revoke her permission for him to be in the house until after the offense; (v) he had spent the day before the offense at 261 East Archwood Avenue; (vi) he was highly intoxicated; (vii) he was not aggressive, hostile, or threatening; and (viii) he behaved consistent with intending to scare Nelson. *Id.* at 364-66.  Stoddard argued that excessive replaying of the 911 and voicemail recordings was inadmissible under Ohio Evid. R. 403(A). *Id.* at 366.

Stoddard argued that the prosecutor engaged in misconduct when the prosecutor: (i) called him a "Beast" while examining Jennifer; (ii) misstated the facts during closing argument in describing why the girls left his car, to whom the argument with Halman pertained, his intent when entering the house, and whether force was used when he entered the house;

(iii) made inflammatory remarks, such as: "Boom, Drops Jessica," "Boom, enough of you" while gesticulating, "Armed to the teeth," and "In the Head." *Id.* at 366-68. Stoddard argued that several jurors admitted during voir dire to having seen media coverage of the case, having prior knowledge of the case, and having biased opinions. *Id.* at 368. He argued that the trial court should have given an instruction on intoxication. *Id.* And he argued that his firearm specifications were allied offenses. *Id.* at 368-69.

To establish cause for the untimely application, Stoddard asserted that: (i) appellate counsel never advised him of his right to file an application to reopen; (ii) he did not receive the Ohio Court of Appeals' decision until 21 days after it was issued due to issues with the prison mailroom; (iii) within one week after he received notice, there was a hostage situation in the prison library, resulting in the library being shut down for a month; (iv) after the library reopened, there were issues with the computers which inhibited his ability to do research; and (v) his pro se status, which was compounded by issues (iii) and (iv). *Id.* at 360.

In support of his claim for good cause, Stoddard attached: (i) a prison grievance complaint dated May 24, 2016 regarding improper computer server maintenance and computer access; (ii) a November 7, 2014 letter to appellate counsel inquiring into the status of his direct appeal, requesting copies of the trial transcripts and appellate briefs, and asking for feedback on several substantive issues; and (iii) a March 2, 2015 letter and an undated letter to appellate counsel requesting several documents. *Id.* at 370-76. Stoddard also submitted an affidavit, in which he stated that appellate counsel never responded to his requests and failed to raise the issues above on direct appeal. *Id.* at 379.

On January 20, 2017, the Ohio Court of Appeals denied Stoddard's Rule 26(B) application to reopen as untimely, finding that ignorance of the law was insufficient to establish

18

good cause.  *Id.* at 441.  The court further found that "minimal delays caused by any situation in the prison law library or Appellant's counsel's failure [to] inform him sooner that his direct appeal had been denied do not explain why Appellant waited more than 15 months to file his application."  *Id.*

Stoddard did not appeal to the Ohio Supreme Court.  *See id.* at 511 (docket for Ohio Ct. App., Case No. CA-27426).

On January 14, 2019, Stoddard filed an Ohio App. R. 26(A) application for reconsideration with the Ohio Court of Appeals.  *Id.* at 442.  Stoddard asserted that he obtained new, previously unavailable evidence proving that a hostage situation occurred in the prison library which inhibited his ability to timely file a Rule 26(B) application to reopen.  *Id.* at 450-51.  Such evidence included: (i) an affidavit from a fellow inmate, Sammy Montanez; (ii) inter-prison communications about the hostage situation; and (iii) an order by the Eighth District granting Montanez's motion for extension of time on the basis of the hostage situation.  *Id.* at 451, 466-72.  Montanez stated that he provided the inter-prison communication and order to Stoddard on October 19, 2018, pursuant to a conversation they had on October 15, 2018.  *Id.* at 466.

Stoddard argued that the Ohio Court of Appeals erred in its application of res judicata when it affirmed the denial of his petition for post-conviction relief.  *Id.* at 448-50.  To excuse his untimely Rule 26(A) application, Stoddard argued that he did not receive notice of the Ohio Court of Appeals' January 20, 2017 decision.  *Id.* at 450.  He stated that he requested from the court a copy of the docket, but he got no response.  *Id.*  He argued that it was not until over a year after the decision that he was able to reach a relative who was able to go on the court's website and see that his application had been denied.  *Id.*

On March 8, 2019, the Ohio Court of Appeals denied Stoddard's Rule 26(A) application as untimely because it was filed more than ten days after the January 20, 2017 decision.  *Id.* at 475.  The court determined that Stoddard had not shown extraordinary circumstances to excuse his untimely filing because, even assuming as true everything Stoddard said, he still waited almost three months after receiving evidence from Montanez before filing his application.  *Id.* at 475-76.

On April 24, 2019, the Ohio Supreme Court received from Stoddard a memorandum in support of jurisdiction contesting the denial of his Rule 26(B) application to reopen.  ECF Doc. 1-10.  On April 25, 2019, the Ohio Supreme Court wrote Stoddard that it would not file the documents because his appeal was untimely by two days.  ECF Doc. 1-11.

## II.     Statute of Limitations

Warden Wainwright argues that Stoddard's § 2254 petition should be dismissed as time-barred under 28 U.S.C. § 2244(d)(1)(A) because it was filed more than one year from when his conviction became final, which the warden argues occurred on March 7, 2018.  ECF Doc. 8 at 11-14.  The warden further argues that Stoddard has not shown that a later § 2244(d) triggering dates applies, that Stoddard is not entitled to equitable tolling, and that Stoddard has not presented evidence of his actual innocence.  *Id.* at 13-19.

Stoddard responds that his conviction became final on April 25, 2019, such that his petition is timely under § 2244(d)(1)(A).  ECF Doc. 1 at 18; ECF Doc. 14 at 10.  Alternatively, he argues that the triggering date under § 2244(d)(1)(B) should apply because the delays caused by the prison mail system, Ohio's lack of a prison-mailbox rule, and the Ohio Supreme Court's refusal to docket his appeal from the March 7, 2018 decision constituted state-created impediments which prevented him from exhausting his claims.  ECF Doc. 14 at 3-4, 6.  Stoddard

20

further argues that he is entitled to equitable tolling because the record shows that he has been

diligent in pursuing his rights but was inhibited by circumstances beyond his control.  *See id.* at

4-11.  And Stoddard argues that the information trial counsel failed to investigate establishing his

residence at 261 East Archwood Avenue was evidence of his actual innocence.  ECF Doc. 1 at 7,

14; ECF Doc. 14 at 11, 13.

      AEDPA imposes a one-year statute of limitations for those seeking a writ of habeas

corpus under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d)(1).  The one-year period begins to run from

the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

*Id.*  The one-year statute of limitations is tolled during the pendency of properly filed motions for

post-conviction relief or other collateral proceedings.  28 U.S.C. § 2244(d)(2).  A motion is

"properly filed" when it complies with the state's rules governing filing, which include time

limits on delivery.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  Once the one-year period has expired,

it cannot be revived by subsequent state collateral review filings.  *Keeling v. Warden, Lebanon*

*Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012).

      Because AEDPA's statute of limitations is not jurisdictional, it is also subject to equitable

tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  If a petitioner seeks equitable tolling, he

21

must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (quotation marks omitted).  There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

### A.  Timeliness

Stoddard's § 2254 petition is untimely under § 2244(d)(1)(A).  Because Stoddard directly appealed his convictions to the Ohio Supreme Court, his convictions became final when the 90-period within which he could have filed a petition for writ of certiorari in the United States Supreme Court expired.  *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The Ohio Supreme Court declined to exercise jurisdiction over Stoddard's direct appeal on February 24, 2016.  ECF Doc. 8-1 at 141.  Thus, Stoddard's conviction became final on May 25, 2016.

The one-year statute of limitations was tolled during the pendency of Stoddard's appeal from the denial of his petition for post-conviction relief, which began on January 12, 2016.  28 U.S.C. § 2244(d)(2); ECF Doc. 8-1 at 169, 530; *see State ex rel. Tyler v. Alexander*, 52 Ohio St.3d 84, 84-85 (Ohio 1990) (holding that, under Ohio law, a document is filed when it is received by the court and not when the prisoner delivers it to the prison mail room).  When the Ohio Court of Appeals dismissed Stoddard's appeal on May 4, 2016, he had until June 20, 2016 to appeal to the Ohio Supreme Court.  Ohio S. Ct. Prac. R. 7.01(A)(1); Ohio Civ. R. 6(A); ECF Doc. 8-1 at 529.  Thus, the statute of limitations began to run on June 21, 2016 and ran for 29 days, until the court's July 20, 2016 decision reinstating Stoddard's appeal.  ECF Doc. 8-1 at 529.[5]  The limitations period continued to toll, uninterrupted, through the Ohio Court of Appeals'

---

[5] Stoddard's motion for reconsideration had no tolling effect because it was filed more than ten days after the Ohio Court of Appeals' May 4, 2016 decision.  Ohio App. R. 26(A)(1)(a) (requiring that applications

March 7, 2018 decision.[6]  From then, the tolling period continued until the expiration of

Stoddard's time to appeal to the Ohio Supreme Court – April 23, 2018.  Ohio S. Ct. Prac. R.

7.01(A)(1); *see* Fed. R. Civ. P. 6(a)(1)(C); Ohio Civ. R. 6(A).

        Stoddard's post-March 7, 2018 filings did not toll the one-year statute of limitations.

Stoddard's April 26, 2018 notice of appeal to the Ohio Supreme Court had no tolling effect

because it was untimely.  *Evans v. Chavis*, 546 U.S. 189, 197 (2006) (stating that "only a *timely*

appeal tolls AEDPA's 1-year statute of limitations" (emphasis in original)); ECF Doc. 1-17.

Stoddard's motion for leave to file a delayed appeal to the Ohio Supreme Court had no tolling

effect because it was improperly filed, as Ohio law does not allow for delayed appeals from the

denial of post-conviction relief.  Ohio S. Ct. Prac. R. 7.01(A)(4)(c); ECF Doc. 1-18.  Stoddard's

September 2018 motion for reconsideration had no tolling effect because it was denied as

untimely.  ECF Doc. 1-21; *see also Vroman v. Brigano*, 346 F.3d 598, 603-04 (6th Cir. 2003)

(stating that a state court's determination of whether a postconviction petition was properly filed

governs over whether such action has a tolling effect).  Stoddard's November 4, 2018 and

January 8, 2019 submissions to the Sixth Circuit and United States Supreme Court had no tolling

effect because, by that point, his collateral review proceedings had concluded.  *Lawrence v.

Florida*, 549 U.S. 327, 332 (2007) (holding that § 2244(d)(2) does not toll the one-year statute of

limitations during the pendency of a petition for certiorari to review a decision affirming the

denial of post-conviction relief).  And Stoddard's January 14, 2019 Ohio App. R. 26(A)

---

for reconsideration be filed within ten days of the order as to which reconsideration is sought); *see Artuz*,
531 U.S. at 8.

[6] The Ohio Court of Appeals' 19, 2017 dismissal of Stoddard's appeal did not affect the tolling period
because the Ohio Court of Appeals reinstated his appeal the same day the limitations period would have
started running again – June 6, 2017.  Ohio S. Ct. Prac. R. 7.01(A)(1); ECF Doc. 8-1 at 582; *see* Fed. R.
Civ. P. 6(a)(1)(A).

application for reconsideration had no tolling effect because it was denied as untimely.  *See Artuz*, 531 U.S. at 8; ECF Doc. 8-1 at 442.

Therefore, the one-year statute of limitations under § 2244(d)(1)(A) ran from April 23, 2018, until it expired on March 26, 2019.  Stoddard's April 25, 2019 memorandum in support of jurisdiction to the Ohio Supreme Court could not revive the statutory period.  *See Keeling*, 673 F.3d at 460; *see also Sands v. Bunting,* No. 3:14-cv-01960, 2015 U.S. Dist. LEXIS 147603, at *13 (N.D. Ohio Sept. 18, 2015).  Thus, Stoddard's current petition, which he delivered for mailing on March 27, 2020, is untimely.  28 U.S.C. § 2244(d)(1)(A); *Houston v. Lack*, 487 U.S. 266, 270 (1988); *see also Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

None of the other triggering dates in § 2244(d)(1) applies to Stoddard's petition. Although Stoddard argues that his petition is timely under § 2244(d)(1)(B), the relevant question under § 2244(d)(1)(B) is whether a state-created impediment prevented Stoddard from timely filing his *federal habeas petition* on or before March 26, 2019.  *See Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003).  The impediments Stoddard cited (delays in prison mail processing, enforcement of state procedural rules, law library access, access to legal materials, and his exhaustion efforts) were not impediments to his ability to file a § 2254 petition in federal court.  *See* ECF Doc. 14 at 4-6.  He was able, for example, to mail applications for reconsideration and petitions for writ of certiorari in other courts before March 26, 2019 despite these impediments.  *See* ECF Doc. 1-21; ECF Doc. 1-22; ECF Doc. 1-23.  Stoddard could have filed his § 2254 petition first and then sought a stay in federal court in order to exhaust what state-court remedies may have been available to pursue his claims.  *See Maddens v. Thaler*, 521 F. App'x 316, 321 (5th Cir. 2013).

Stoddard has not asserted a claim based on a newly recognized, retroactively applicable constitutional right.  28 U.S.C. § 2244(d)(1)(C); *see generally* ECF Doc. 1; ECF Doc. 14.  And although Stoddard mentions that he has been diligent in discovering the factual predicate of his claims, the substance of his argument relates to his efforts to have his claims heard in state court – not the discovery of the factual predicate underlying each claim.  28 U.S.C. § 2244(d)(1)(D); ECF Doc. 14 at 6-10.  Stoddard's arguments more appropriately relate to whether he is entitled to equitable tolling, to which I now turn.

### B.    Equitable Tolling

Although Stoddard has been diligent in pursuing his rights, he has not established that equitable tolling is warranted.  *Holland*, 560 U.S. at 649.  Stoddard was required to act with "reasonable diligence … not maximum feasible diligence."  *Id.* at 653 (quotation marks omitted; citations omitted).  For the most part, Stoddard has acted with reasonable diligence.  Stoddard did not wait for his direct appeal to conclude before seeking post-conviction relief.  *See* ECF Doc. 8-1 at 142, 512.  He timely appealed the denial of post-conviction relief and, despite mistakes in drafting his appellate brief, he was diligent in trying to rectify the errors and respond to the court's orders.  *See id.* at 173-74, 177-214, 216-335, 528-30.  And Stoddard continued to pursue his rights, albeit unnecessarily, in other forums.  *See* ECF Doc. 1-17; ECF Doc. 1-18; ECF Doc. 1-19; ECF Doc. 1-20; ECF Doc. 1-21; ECF Doc. 1-22; ECF Doc. 1-23.

Stoddard was less diligent in his efforts to fully exhaust Grounds Three through Nine, given that: (i) he filed his Ohio App. R. 26(B) application to reopen over 15 months after it was due; (ii) the reasons he gave to excuse the delay would not have accounted for the full 15-month period; and (iii) aside from his one request for the docket, it is unclear why he was entirely unable to learn of the Ohio Court of Appeals' decision denying his application to reopen for over

a year.  *See* ECF Doc. 8-1 at 360, 379-80.  Nevertheless, I find that, on balance, Stoddard was reasonably diligent in pursuing his rights.

However, Stoddard has not shown that some extraordinary circumstance prevented him from timely filing his § 2254 petition on or before March 26, 2019.  *Holland*, 560 U.S. at 649. The thrust of Stoddard's argument is that he should not be penalized for his efforts in trying to ensure that all his grounds for relief had been heard by the state courts.  ECF Doc. 14 at 9-10. Those efforts, he argues, have been impeded by circumstances beyond his control: (i) delays in the processing of his prison mail; (ii) lack of notice of state court decisions; (iii) the hostage situation in the prison library; and (iv) issues with library's computers.  ECF Doc. 14 at 4-10.

I agree with Stoddard that these impediments were external to him.  But the focus of equitable tolling is what prevented him from timely filing his *federal habeas petition.  See Holland*, 560 U.S. at 649.  Although the impediments Stoddard cited may have affected his ability to abide by the state court's deadlines for timely filing of applications, motions, and appeals, he has not explained how those impediments affected his ability to file his current petition before the deadline expired.  His desire to exhaust state court remedies is understandable, but it is not an extraordinary circumstance that would excuse his untimely filing. *Madden*, 521 F. App'x at 321; *see also, e.g.*, *Hernandez v. Small*, No. CV 08-08639, 2011 U.S. Dist. LEXIS 113728, at *20-21 (C.D. Cal. Aug. 11, 2011) (concluding that the petitioner's subjective desire to exhaust his claims was not grounds for equitable tolling); *Davis v. Kyler*, No. 03-6913, 2007 U.S. Dist. LEXIS 29249, at *11-14 (E.D. Penn. Apr. 19, 2007) (concluding that the petitioner's improperly filed efforts to exhaust state remedies were not a basis for equitable tolling).  Thus, Stoddard has not established a basis for equitable tolling.

C.      **Actual Innocence**

Stoddard also has not established that he can overcome his untimeliness under the actual-innocence exception. *McQuiggin*, 569 U.S. at 386.  The evidence Stoddard presented to support his actual-innocence claim consisted of five affidavits from himself, friends, and family attesting to his residence at 261 East Archwood Avenue.  ECF Doc. 1 at 7, 14; ECF Doc. 14 at 13; *see* ECF Doc. 8-1 at 155-60.[7]  For Stoddard to succeed, the affidavits must be "new" and "reliable" evidence.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

There is a circuit split on the issue of whether the actual-innocence exception applies only to evidence not *available* at trial or more broadly to all evidence *not presented* during trial. *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012).  To date, the Sixth Circuit has not decided which definition of "new" controls.  *See Jones v. Bradshaw*, Nos. 07-3766/4308, 2022 U.S. App. LEXIS 984, at *4 (6th Cir. Jan. 14, 2022) (unreported).  However, the Sixth Circuit has "suggested" that it is enough that the evidence have not been presented at trial.  *Everson v. Larose*, Nos. 19-3805/19-4154, 2020 U.S. App. LEXIS 14290, at *11 (6th Cir. May 4, 2020) (quoting *Bradshaw*, 693 F.3d at 633)).  For present purposes, I accept that the affidavits are "new."

I find, however, that the affidavits are not "reliable."  Stoddard's self-serving affidavit is insufficient.  *See McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("A reasonable juror surely could discount his own testimony in support of his own cause." (citations omitted)).  The other affidavits are all from persons with a personal stake in Stoddard's exoneration: friends and

---

[7] Although Stoddard also argues that Jennifer's statements to county officials, law enforcement, and Stoddard through jailhouse phone calls also show his actual innocence, he has not presented evidence of these statements.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Genous v. Gray*, No. 2:19-cv-3742, 2020 U.S. Dist. LEXIS 48475, at *5-6 (S.D. Ohio Mar. 20, 2020) ("[T]he burden is on the habeas petitioner to actually present the new exculpatory evidence, not to speculate that it may exist and then invoke federal court discovery to try to find it.").

family.  *See Craig v. Coleman*, No. 1:16-cv-1003, 2017 U.S. Dist. LEXIS 153241, at *16-17

(N.D. Ohio June 21, 2017) (collecting cases holding that affidavits from family members were

insufficient to meet the "reliability" prong of an actual-innocence claim); *see also, e.g.*, *Frees v.

Winn*, No. 18-CV-12805, 2019 U.S. Dist. LEXIS 94710, at *18 (E.D. Mich. June 6, 2019)

("[T]here is a risk of bias in affidavits made by close friends or relatives of the petitioner.");

*Kalak v. Berghuis*, No. 2:11-CV-12476, 2015 U.S. Dist. LEXIS 60290, at *20 (E.D. Mich. May

8, 2015) ("Affidavits from family members that are created after trial are not sufficiently reliable

evidence to support a finding of actual innocence.").

Moreover, Stoddard has not established that "in light of the new evidence, no juror,

acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513

U.S. at 329.  Seven witnesses gave testimony on who resided at 261 East Archwood Avenue.

None of them identified Stoddard as a resident on the night of the offense.  *See* ECF Doc. 13-3 at

28, 439, 793, 1160, 1181, 1358-59; ECF Doc. 13-4 at 64, 101, 115, 128-29.  Further, there was

testimony that: (i) Stoddard had lived at an address 20 minutes from Jennifer's house since

November 2012 (ECF Doc. 13-3 at 818-19, 836-37, 1317-18, 1342, 1352; ECF Doc. 13-4 at

135); (ii) although Stoddard had stayed overnight in 2012, he had not stayed over at Jennifer's

house in "weeks" (ECF Doc. 13-3 at 886-87); (iii) Stoddard had "never lived" with Jennifer,

being only a weekend overnight guest in the summer of 2012 (ECF Doc. 13-4 at 130, 135);

(iv) Anthony Risten ("Anthony") had barred Stoddard from visiting his house since November

2012 and was disapproving of Stoddard's presence on January 5, 2013 (ECF Doc. 13-3 at 1384-

85; ECF Doc. 13-4 at 71); (v) only Anthony and Jennifer had keys to the house, both of whom

denied having provided Stoddard with a key (ECF Doc. 13-3 at 440, 1385; ECF Doc. 13-4 at

115); (vi) Halman had intended to lock the door upon hearing Stoddard's car approach the house

(ECF Doc. 13-3 at 36-38, 134, 165-66); (vii) Stoddard had no reason for being at Jennifer's house at the time of the offense and was not welcome (ECF Doc. 13-3 at 40-43, 56-60); and (viii) Stoddard had been told at the entryway that he was not allowed inside the house (ECF Doc. 13-3 at 444-45, 519-20).

Because Stoddard's § 2254 petition is untimely and he has not established grounds for equitable tolling or a gateway actual innocence claim, I recommend that Stoddard's claims be DISMISSED as untimely.

## III.    Alternative Analysis

Even if Stoddard's § 2254 petition were not barred by AEDPA's statute of limitations, I would find that his claims for relief are noncognizable, procedurally defaulted, and/or meritless.

### A.    Ground One

In his Ground One claim, Stoddard reasserts his first assignment of error from his direct appeal that there was insufficient evidence to establish the "purposely" element of his aggravated murder conviction and that his conviction was against the manifest weight of the evidence.  ECF Doc. 1 at 6; ECF Doc. 14 at 17-19.  Warden Wainwright argues that Stoddard has not established that the state court's denial of this claim was contrary to or an unreasonable application of clearly established law.  *See* ECF Doc. 8 at 40-46.

#### 1.    Cognizability

Stoddard's Ground One claim is not cognizable to the extent he argues that his conviction was against the manifest weight of the evidence.  To obtain a writ of habeas corpus, Stewart has the burden to prove that he is "in custody in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "It is well-settled that claims regarding the manifest weight of the evidence are grounded in state law and therefore not cognizable on federal habeas

review." *Jackson v. Noble*, No. 3:18-cv-113, 2020 U.S. Dist. LEXIS 250037, at *10 (N.D. Ohio Sept. 15, 2020) (collecting cases).  Thus, Stoddard's Ground One claim can only be reviewed as to his challenge to the sufficiency of the evidence.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).

### 2. Merits

In reviewing a claim of lack of sufficient evidence, federal courts apply the *Jackson v. Virginia* standard: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979) (emphasis in original).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

Because the Ohio Court of Appeals addressed Stoddard's sufficiency challenge on the merits, a writ of habeas corpus can issue only if that decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d).  So long as "fairminded jurists" could disagree on whether the state court got it right, we may not grant relief.  *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "All told, [Stoddard's claim] faces 'two layers of judicial deference,' one premised on deference to the jury under *Jackson*, the other premised on deference to the state courts under AEDPA." *Potts v. Wainwright*, No. 21-3293, ___ F. App'x ___ , 2022 U.S. App. LEXIS 13538, at *5 (6th Cir. 2022).

Under Ohio's aggravated murder statute: "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to

commit … aggravated burglary … ."  Ohio Rev. Code § 2903.01(B).  "A person acts purposely when it is [his] specific intention to cause a certain result … ."  Ohio Rev. Code § 2901.22(A). Pursuant to the doctrine of transferred intent, "the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim."  *State v. Solomon*, 66 Ohio St. 2d 214, 218 (Ohio 1981).  Thus, the defendant's intent towards the *intended* victim is transferred to the *unintended* victim of his conduct and he can be held liable as though he intended to harm and did harm the same person. *State v. Mullins*, 602 N.E.2d 769, 770 (Ohio Ct. App. 1992).

The Ohio Court of Appeals' denial of Stoddard's Ground One claim was not contrary to *Jackson*.  28 U.S.C. § 2254(d)(1).  Although the court cited state law to articulate the standard for evaluating sufficiency-of-the-evidence claims, the standard that it applied was consistent with *Jackson*.  ECF Doc. 8-1 at 107 (quoting *State v. Jenks*, 61 Ohio St. 3d 259, 273 (Ohio 1991)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that at state court doesn't need to cite the applicable federal decision but need only apply a rule consistent with that opinion).

The Ohio Court of Appeals' decision also did not involve an unreasonable application of *Jackson*.  28 U.S.C. § 2254(d)(1).  The evidence the court cited was evidence from which a rational trier of fact could conclude that Stoddard intended to kill Nelson when he fired the shot that killed Karam.  *See Mullins*, 602 N.E.2d at 770.  Such evidenced included: (i) Halman's impression that Nelson and Stoddard were going to get into a fight (ECF Doc. 13-3 at 40, 42); (ii) Stoddard's act of shooting Halman in the head before following Nelson into the house (ECF Doc. 13-3 at 44-46, 47, 478, 489); (iii) Nelson's testimony that Stoddard was aiming/shooting at him (ECF Doc. 13-3 at 450, 476, 484, 519); (iv) Nelson's testimony that, although the lights to the hallway had been turned off, the kitchen sink and living room lights were on (ECF Doc. 13-3

at 490); (iv) Nelson's testimony that, after Stoddard had fired the shot that struck Karam, he heard Stoddard say to him, "You're next" (ECF Doc. 13-3 at 447); (v) Jolynn's testimony that she heard Stoddard yelling at Nelson while pointing a gun at him (ECF Doc. 13-4 at 40); (vi) Martin Lewis's testimony that samples taken from Karam, Nelson, and Jolynn were indicative of gunshot residue, which could be deposited on individuals in close proximity to the gun upon discharge (ECF Doc. 13-3 at 1144-45, 1148-49, 1154); (vii) Anthony's testimony that Stoddard afterwards said, "I had to do what I had to do" (ECF Doc. 13-3 at 1362); and (viii) Stoddard's voicemail message to Jennifer that "you've brought this upon your own people …" (ECF Doc. 8-1 at 115).  *See* ECF Doc. 8-1 at 108-17.  Therefore, the state court's conclusion that there was sufficient evidence from which a rational trier of fact could have found the "purposely" element of aggravated murder to have been proven was not so lacking in justification that it was beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 102-03.

Should the Court prefer to dispose of Stoddard's Ground One claim on this basis, it could be dismissed as meritless.

**B.    Ground Two**

In his Ground Two claim, Stoddard reiterates his second assignment of error from his direct appeal that the trial court should have merged his aggravated murder conviction with his convictions for the attempted murder of Nelson and the reckless homicide of Karam's unborn child, the failure of which resulted in a double jeopardy violation.  ECF Doc. 1 at 6-7.  Warden Wainwright responds that this claim is noncognizable because it concerns a sentencing error. ECF Doc. 8 at 34-35.

### 1.    Cognizability

I disagree with Warden Wainwright that Stoddard's Ground Two claim is subject to dismissal on cognizability grounds.  There are certain aspects of the trial court's sentencing determination that are beyond the scope of federal habeas review, such as the decision to impose consecutive sentences.  *E.g.*, *Spraggins v. Washburn*, No. 17-5714, 2017 U.S. App. LEXIS 28379, at *5-6 (6th Cir. Dec. 28, 2017) (unreported) (citing *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000)); *Harrison v. Parke*, No. 89-6495, 1990 U.S. App. LEXIS 19784, at *5 (6th Cir. 1990) (unreported) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)).  And as will be discussed below, there are portions of the state courts' merger analysis that are noncognizable.  But whether a Fifth Amendment violation occurred, which the heart of Stoddard's Ground Two claim, *is* cognizable.  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

### 2.    Procedural Default

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his claim in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures."  *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019).  Thus, we cannot consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgment.'"  *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Coleman*, 501 U.S. at 729).

This circuit consults a four-part test to decide whether a petitioner has procedurally defaulted his claim.  A petitioner procedurally defaults a claim if: (i) the petitioner fails to comply with a state procedural rule; (ii) the state courts enforced the rule; (iii) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (iv) the petitioner can show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Although not raised by Warden Wainwright, Stoddard's Ground Two claim is procedurally defaulted on the assertion that his aggravated murder and attempted murder convictions should have merged.  *Lovins*, 712 F.3d at 295 (stating that a court may raise procedural default *sua sponte*, even if waived by the state).  Under Ohio law, a failure to raise a merger issue in the trial court forfeits all but plain-error review.  *State v. Rogers*, 413 Ohio St. 3d 385, 387 (Ohio 2015).  Stoddard did not argue at sentencing that the trial court should have merged his aggravated murder and attempted murder convictions.  *See* ECF Doc. 13-6 at 963-1012.  The Ohio Court of Appeals expressly enforced *Rogers*'s forfeiture rule against Stoddard. ECF Doc. 8-1 at 120.  And enforcement of that rule is an adequate and independent state ground, even when the court reviews the claim for plain error.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 336-37 (6th Cir. 2012); *see also Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006) ("[P]lain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue.").

Stoddard has not attempted to establish cause to excuse his procedural default of this portion of his Ground Two claim.  *See generally* ECF Doc. 1; ECF Doc. 14.  The lack of cause makes it unnecessary to address prejudice.  *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). And Stoddard's Ground Two claim is not premised on an assertion of actual innocence.  *See*

*generally* ECF Doc. 1; ECF Doc. 14.  The issue of whether Stoddard's aggravated murder and

attempted murder convictions should have merged is, therefore, procedurally defaulted.

> ### 3.    Merits

The Double Jeopardy Clause of the Fifth Amendment protects against "multiple

punishments for the same offense." U.S. Const. amend. V; *Pearce*, 395 U.S. at 717.  More

specifically, it "prevent[s] the sentencing court from prescribing greater punishment than the

legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).  If the state legislature

intended to impose multiple punishments for the same conduct, no Fifth Amendment violation

occurs.  *Id.*  In assessing the intent of a state legislature, federal courts are bound by a state

court's determination that a legislature intended multiple punishments for a single criminal

incident.  *Volpe v. Trim*, 708 F.3d 688, 696-97 (6th Cir. 2013).

Ohio courts apply Ohio Rev. Code § 2941.25 to determine how the Ohio General

Assembly intended to deal with "cumulative punishments." *Id.* at 697.  It provides:

> (A) Where the same conduct by a defendant can be construed to constitute two or
> more allied offenses of similar import, the indictment or information may contain
> for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar
> import, or where his conduct results in two or more offenses of the same or
> similar kind committed separately or with a separate animus as to each, the
> indictment or information may contain for all such offenses, and the defendant
> may be convicted of all of them.

Ohio Rev. Code § 2941.25.

The Ohio Court of Appeals determined that Stoddard's aggravated murder and reckless

homicide convictions for the deaths of Karam and her unborn child were crimes of dissimilar

import under § 2941.25(B).  ECF Doc. 8-1 at 119.  That is a state law determination to which we

must defer and by which we are bound.  *Volpe*, 708 F.3d at 696-97.  And habeas relief is not

available for any error the state court may have committed in applying § 2941.25 to Stoddard's case.  *Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014) ("At worst, the state court incorrectly applied Ohio's allied offenses statute to determine the legislature's intent.  Habeas relief, especially when circumscribed by § 2254(d)(1), is not available for such alleged errors." (footnote omitted)).  This is the noncognizable aspect of Stoddard's Ground Two claim.

The cognizable aspect is whether the Ohio Court of Appeals' decision was based upon an unreasonable determination of the facts in light of the record before it.  28 U.S.C. § 2254(d)(2). The evidence at trial established that: (i) Karam died as a result of a gunshot wound to the head (ECF Doc. 13-3 at 937, 972-74, 977); (ii) the bullet that killed her forensically matched Stoddard's gun (ECF Doc. 13-3 at 1040, 1113-14); and (iii) the unborn child died as a direct consequence of her mother's death (ECF Doc. 13-3 at 938, 982-84).  The Ohio Court of Appeals accurately presented these facts and relied upon them in affirming the trial court's conclusion that Stoddard's aggravated murder and reckless homicide charges did not merge.  ECF Doc. 8-1 at 105, 119.  And from these facts, the state courts could reasonably conclude that the offenses were of dissimilar import.  *See State v. Ruff*, 143 Ohio St. 3d 114, 120 (Ohio 2015); *State v. Feller*, 2012-Ohio-6016, ¶36 (Ohio Ct. App. 2012); *State v. Wright*, 2009-Ohio-5474, ¶62 (Ohio Ct. App. 2009).  Thus, the state courts' decision did not involve an unreasonable determination of the facts presented.  28 U.S.C. § 2254(d)(2).

Should the Court prefer to dispose of Stoddard's Ground Two claim on this basis, it could be dismissed as partly noncognizable, partly procedurally defaulted, and partly meritless.

### C.    Grounds Three, Eleven, and Twelve

Stoddard's Ground Three and Eleven claims reassert the ineffective assistance claims he raised in his Ohio App. R. 26(B) application to reopen and petition for post-conviction relief,

respectively.  ECF Doc. 1 at 8, 14-15.  In his Ground Twelve Claim, Stoddard seeks to reassert

his argument that the trial court erred by not holding an evidentiary hearing on his claim of

ineffective assistance of trial counsel.  *Id.* at 15-16.

Warden Wainwright argues that the Ground Three and Ground Eleven claims are

procedurally defaulted because Stoddard did not appeal the denial of these claims to the Ohio

Supreme Court.  ECF Doc. 8 at 24-25.  The warden further argues that the Ohio Court of

Appeals reasonably determined that the new evidence pertaining to Stoddard's residence was not

credible.  *Id.* at 51.  The warden argues that the Ground Twelve claim is noncognizable.  *Id.* at

35.

### 1.    Cognizability

Warden Wainwright is correct that Stoddard's Ground Twelve claim is noncognizable.

Any argument that the trial court erred by not holding an evidentiary hearing contests the state

court's post-conviction procedures.  Such issues are noncognizable.  *Cornwell v. Bradshaw*, 559

F.3d 398, 411 (6th Cir. 2009) (stating that federal habeas corpus proceedings "cannot be used to

challenged errors or deficiencies in state court post-conviction proceedings"); *see also Miller v.

Phillips*, No. 1:20cv2135, 2021 U.S. Dist. LEXIS 130669, at *17 (N.D. Ohio July 14, 2021)

(collecting cases).  Thus, Stoddard's Ground Twelve claim is noncognizable and should be

dismissed on that basis.

### 2.    Procedural Default

#### a.    Ground Three

Stoddard's Ground Three claim is procedurally defaulted.  As Stoddard concedes, this

claim has not been "exhausted."  ECF Doc. 1 at 8.  Stoddard's Ohio App. R. 26(B) application to

reopen was due within 90 days of the Ohio Court of Appeals' decision on direct appeal:

December 16, 2015.  Ohio App. R. 26(B)(1); ECF Doc. 8-1 at 103.  Stoddard's January 12, 2017

application to reopen was, therefore, untimely.  ECF Doc. 8-1 at 360.  The Ohio Court of

Appeals denied the application on that basis.  *Id.* at 440.  And Ohio's enforcement of the 90-day

filing period is an adequate and independent state procedural rule.  *Baker v. Bradshaw*, 495 F.

App'x 560, 565-66 (6th Cir. 2012).

Stoddard argues that he can establish good cause based on circumstances beyond his

control: (i) the hostage situation; (ii) the resulting closure of the prison library; and (iii) issues

with computer access.  ECF Doc. 14 at 7-8, 15.  Because the Ohio Court of Appeals expressly

found that Stoddard failed to establish good cause to excuse his untimely filing, AEDPA

deference applies to that finding.  *Jackson v. Lafler*, 453 F. App'x 620, 624 (6th Cir. 2011).

Stoddard has not attempted to show that the state court's handling of his application to reopen

was contrary to or an unreasonable application of United States Supreme Court precedent.  28

U.S.C. § 2254(d)(1); *see generally* ECF Doc. 1; ECF Doc. 14.  And Stoddard has not shown that

the court's decision was based on an unreasonable determination of the facts before it.  28 U.S.C.

§ 2254(d)(2).  As the state court determined, whatever delays were caused by Stoddard's lack of

knowledge of his ability to file an application to reopen and the lack of access to the law library

and computers, they did not explain (and still do not explain) why he was unable to file his

application to reopen until 15 months after the decision on his direct appeal.  ECF Doc. 8-1 at

441.  Thus, Stoddard has not established cause to overcome his procedural default.  *Matthews*,

486 F.3d at 891.  And as discussed above, Stoddard's affidavits in support of his sub-claim of

ineffective assistance of trial counsel did not satisfy the actual-innocence exception.  *See Schlup*,

513 U.S. at 324.  Stoddard's Ground Three claim is, therefore, procedurally defaulted.  *See*

*Lovins*, 712 F.3d at 295.

38

### b.    Ground Eleven

A second way procedural default can occur is when the petitioner did not fairly present the claim to the state courts while state court remedies were still available.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  This requires that the petitioner present his claim at each and every stage of the state review process.  *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009).

Whether Stoddard procedurally defaulted his Ground Eleven claim is a closer question. Stoddard raised this claim in his petition for post-conviction relief.  ECF Doc. 8-1 at 153-54.  On direct appeal, Stoddard reiterated the substance of his arguments for why trial counsel was ineffective but framed the issue in terms of the trial court's failure to hold an evidentiary hearing on his claim.  ECF doc. 8-1 at 290.  Whether an evidentiary hearing should have been held on a substantive claim is a procedural issue that does not preserve the underlying claim.  *Stoermer v. Warden*, No. 3:20-cv-133, 2020 U.S. Dist. LEXIS 241080, at *8-9 (S.D. Ohio Dec. 21, 2020). However, the trial court's analysis as to both the issue of ineffective assistance of trial counsel and the necessity of an evidentiary hearing were the same.  *See* ECF Doc. 8-1 at 166-68.  Given the ambiguity, I find the issue sufficiently preserved through Stoddard's attempted appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 302-07; ECF Doc. 1-16.

That being said, the Ohio Supreme Court applied a state procedural rule to preclude merits review of his Ground Eleven claim.  *Lovins*, 712 F.3d at 295.  The Ohio Supreme Court refused to docket Stoddard's appeal because it was untimely.  ECF Doc. 1-17.  And the Ohio Supreme Court's enforcement of the timeliness requirements for filing an appeal is an adequate and independent state ground to bar federal habeas review.  *Baker*, 495 F. App'x at 565.

Stoddard argues that he can establish cause for his procedural default because he deposited his memorandum in support of jurisdiction with the prison mail system seven days before the deadline.  ECF Doc. 14 at 4, 6.  That contention has evidentiary support.  Stoddard has filed a payment slip indicating that he paid for his mail to be sent on April 16, 2018 but was not processed until April 18, 2018.  ECF Doc. 14-1.  The Sixth Circuit has held that a prisoner may establish good cause when he delivers his petition for mailing five days before the deadline. *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003).  The inability to timely file left Stoddard without a mechanism by which to exhaust his claim, such that prejudice resulted.  *Id.* (concluding similarly); *see also Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (assuming prejudice under *Maples* and concluding that the untimely filing did not result in procedural default).  Thus, I find that Stoddard's Ground Eleven claim is *not* procedurally defaulted.

### 3.  Merits

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, under which the petitioner must show that (1) trial counsel behaved unreasonably; and (2) that unreasonable performance prejudiced the defense.  466 U.S. 668, 687 (1984).

The Ohio Court of Appeals' denial of Stoddard's Ground Eleven claim was not contrary to *Strickland*.  28 U.S.C. § 2254(d)(1).  The court explicitly cited and applied the *Strickland* two-prong deficiency and prejudice standard.  ECF Doc. 8-1 at 355.  And the court reasonably, albeit implicitly, concluded that Stoddard failed to establish prejudice.  *Id.* at 356-58.

Fair-minded jurists could also disagree on the correctness of the Ohio Court of Appeals' prejudice determination.  *See Harrington*, 562 U.S. at 102-03.  The issue of Stoddard's residence was relevant to the "trespass" element of his aggravated burglary charge.  Ohio Rev. Code

§§ 2911.11(A), 2911.21(A)(1); *see also* Ohio Rev. Code § 2911.10 (cross-referencing § 2911.21).  By concluding that the affidavits were not reliable, the state court effectively determined that there was no reasonable probability of a different result at trial had the affiants testified.  As the state court noted, not all of the affiants stated that Stoddard lived at 261 East Archwood Avenue at the time of the offense (January 6, 2013).  Sheryl stated he lived there through the end of 2012.  ECF Doc. 8-1 at 155.  William stated that Stoddard lived there toward the end of 2012.  *Id.* at 159.  And Helen didn't say when Stoddard live there.  *Id.* at 160.  Aside from Stoddard, the only affiant who named Stoddard as a resident of 261 East Archwood Avenue at the time of the offense was Sheryl, but she qualified her answer.  *Id.* at 156 ("to my knowledge").  And each of the affiants had an interest in Stoddard's exoneration, as they were friends or relatives.  Therefore, the state court's conclusion that Stoddard suffered no prejudice on account of counsel's alleged failure to call witnesses on the issue of his residence was not so lacking in justification that it was beyond any possibility of fair-minded disagreement.  *Harrington*, 562 U.S. at 102-03.

Moreover, other than reasserting his claim that trial counsel was ineffective, Stoddard has not argued in what way the trial court or the Ohio Court of Appeals' decision was contrary to or an unreasonable application of controlling Supreme Court precedent.  28 U.S.C. § 2254(d)(1); *see generally* ECF Doc. 1; ECF Doc. 14.  Nor has he argued to this court in what way the state court's decision was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).

Should the Court prefer to dispose of Stoddard's Ground Three, Eleven, and Twelve claims on the bases discussed above, they could be dismissed as procedurally defaulted, meritless, and non-cognizable, respectively.

41

### D.    Ground Four through Nine

In his Ground Four through Ground Nine claims, Stoddard seeks to raise the substantive issues underlying claims two through seven of his Ohio App. R. 26(B) application to reopen. *Compare* ECF Doc. 1 at 8-13, *with* ECF Doc. 8-1 at 364-69. Warden Wainwright argues that these grounds for relief are procedurally defaulted because they were never presented to the Ohio courts. ECF Doc. 8-1 at 25-28. In his traverse, Stoddard concedes that the claims are defaulted, but faults appellate counsel for the default. ECF Doc. 14 at 13-14.

As both parties assert, Stoddard's Ground Four through Nine claims are procedurally defaulted because they were never fairly presented to the Ohio courts. *Williams*, 460 F.3d at 806. Stoddard raised these claims for the first time in his Rule 26(B) application to reopen as issues that appellate counsel was ineffective for not raising on direct appeal. ECF Doc. 8-1 at 364-69. As such, they were raised in terms of ineffective assistance of appellate counsel. The issues underlying such claims, were therefore not fairly presented to the Ohio courts. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim." (quotation marks omitted)). And Stoddard cannot now return to state court to raise these claims because they could have been raised on direct appeal and would therefore be barred by Ohio's res judicata doctrine. *State v. Cole*, 2 Ohio St. 3d 112, 113 (Ohio 1982).

Appellate counsel's ineffective assistance in failing to raise these claims could establish "cause" to excuse Stoddard's procedural default. *Gunner v. Welch*, 749 F.3d 511, 516 (6th Cir. 2014). But that avenue for establishing cause has a threshold limitation Stoddard has failed to surmount. "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Hodges v. Colson*, 727 F.3d 517,

530 (6th Cir. 2013) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).  That's the case here.  As discussed in Sect. III.C.2.A., above: Stoddard's Rule 26(B) application was untimely; the Ohio Court of Appeals denied the application as untimely; and failure to abide by Ohio's timeliness requirements is an adequate and independent state ground to bar habeas relief.  Like his Ground Three claim, Stoddard has not established cause to excuse his procedural default, making it unnecessary to consider prejudice.  *Matthews*, 486 F.3d at 891.  And Stoddard's Grounds One through Nine claims do not rely on evidence bearing on his actual innocence.

Thus, should the Court prefer to dispose of Stoddard's Ground Four through Nine claims on theses basis, they could be dismissed as procedurally defaulted.

### E.    Grounds Ten and Thirteen

In his Ground Ten claim, Stoddard argues that the Ohio Court of Appeals erred when it determined that he failed to establish good cause to excuse his untimely filing.  ECF Doc. 1 at 13-14.  And in his Ground Thirteen claim, Stoddard argues that the cumulative effect of the errors alleged in his other grounds for relief amount to a due process violation.  *Id.* at 16-19.  Warden Wainwright responds that both of these claims are noncognizable and, because the other claims are procedurally defaulted, noncognizable, and/or meritless, Stoddard's Ground Thirteen claim is meritless.  ECF Doc. 8 at 35-36

I agree with Warden Wainwright on both contentions.  The Ohio Court of Appeals' interpretation and enforcement of its pre-filing requirements is an issue of state law.  *See, e.g.*, *Johnson v. Eppinger*, 2020 U.S. Dist. LEXIS 251317, at *49 (N.D. Ohio June 1, 2020), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 42837 (N.D. Ohio Mar. 8, 2021); *Snelling v. Tibbals*, No. 1:16 CV 212, 2017 U.S. Dist. LEXIS 42459, at *13-14 (N.D. Ohio Jan. 25, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 42461 (N.D. Ohio May 23,

2017); *Smith v. Easterling*, No. 3:08-0322, 2009 U.S. Dist. LEXIS 40255, at *1-2 (M.D. Tenn.

May 11, 2009).  "[F]ederal habeas corpus relief does not lie for errors of state law … ."  *Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990) (citations omitted).  And an attack on a state court's procedural

ruling is not cognizable on federal habeas review.  *Shank v. Marquis*, No. 21-3372, 2021 U.S.

App. LEXIS 30090, at *3 (6th Cir. Oct. 6, 2021) (unreported).

Further, "the law of this Circuit is that cumulative error claims are not cognizable on

[federal] habeas [review] because the Supreme Court has not spoken on this issue."  *Williams*,

460 F.3d at 716; *see also Becton v. Phillips*, No. 19-6178, 2020 U.S. App. LEXIS 6124, at *12

(6th Cir. Feb. 27, 2020) (unreported); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

Moreover, Stoddard's Ground Thirteen claim fails because all his alleged errors are

noncognizable, procedurally defaulted, and/or meritless, such that there are no reviewable errors

to cumulate.  *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc).

Thus, should the Court prefer to dispose of Stoddard's Grounds Ten and Thirteen claims

on this basis, they could be dismissed as noncognizable and, as to Ground Thirteen, meritless.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts

provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when

it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule

tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the

specific issue or issues that satisfy the showing required by § 2253 (c)(2)," Rule 11(a).  In light

of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at

the time of its final adverse order, a recommendation regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

If the Court accepts my recommendations, Stoddard will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Stoddard's § 2254 petition is untimely, and his claims are otherwise noncognizable, procedurally defaulted, and/or meritless.  Because jurists of reason would not find these conclusions to be debatable, I recommend that no COA issue in this case.

## V.  Recommendation

Because Stoddard's § 2254 petition is untimely and his claims are otherwise noncognizable, procedurally defaulted, and/or meritless, I recommend that Stoddard's claims be DISMISSED and his petition for a writ of habeas corpus be DENIED.  I further recommend that Stoddard not be granted a COA.

Dated: July 20, 2022

Thomas M. Parker
United States Magistrate Judge

---

### **Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).